UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

WESLEY RILEY,

                                    NO. CIV. S-06-2126 LKK/KJM

     Plaintiff,

  v.                                    ORDER

MICHELE GIGUIERE,

     Defendant.
                               /

    Plaintiff Wesley Riley has brought suit against Michelle Giguiere, Budget Property Management, Inc., Cal Investors, Inc., and Josephine Santos under the Fair Debt Collections Practices Act, 15 U.S.C. § 1692, et seq. The crux of the plaintiff's complaint is that the defendants improperly instituted unlawful detainer actions against him, based upon a residential lease agreement into which the plaintiff had entered.

    Defendant Giguiere moves for summary judgment on four issues. The court decides the motion upon the papers and after oral argument.

////

1

# I. FACTS[1]

On May 21, 1999, the plaintiff entered into a one-year residential lease agreement for a property located at 8749 Grayling Avenue in Sacramento with Budget Property Management. The plaintiff's girlfriend, Sherry Ahrens, was also a party to the lease agreement. According to the plaintiff, he faxed a letter to Budget Property Management on December 6, 1999 that stated that he would no longer reside on the property as of January 1, 2000. He also alleges that he dropped off his keys to the property at the Budget Property Management office.

On August 10, 2004, an employee of Cal Investors, Inc. (the successor to Budget Property Management) posted on the door of the Grayling Avenue property a three-day notice to pay back rent. He also mailed a copy of the notice to the plaintiff and Ms. Ahrens, at the Grayling Avenue address. At that time, rent had not been paid for July and August, 2004. Defendant Giguiere, who had been retained by Cal Investors, initiated an unlawful detainer action against the plaintiff and Ms. Ahrens on August 17, 2004 in Sacramento County Superior Court. Defendant Giguiere had been provided with copies of the lease agreement, the property management agreement, the three-day notice, and changes to the lease agreement. Ms. Ahrens was personally served and the defendant contends that substituted service was effected on the plaintiff by the server leaving a copy of the Summons and Complaint with Ms.

---

[1] The facts are undisputed unless otherwise noted.

1  Ahrens and mailing a copy to the plaintiff at the Grayling Avenue
2  property. Defendant's Statement of Undisputed Facts ¶ 39. Later
3  that month, Ms. Ahrens paid Cal Investors the owed rent.
4  　　In November 2004, Cal Investors again posted a three-day
5  notice on the property and mailed a copy to Ms. Ahrens and the
6  plaintiff at that address. On November 22, 2004, a second unlawful
7  detainer action was initiated against Ms. Ahrens and the plaintiff.
8  The defendant contents that service was effective on both of them
9  by leaving a copy of the Summons and Complaint with an occupant of
10 the Grayling Avenue property. Id. ¶ 45.
11 　　On December 14, 2004, a default judgment was entered against
12 the plaintiff. On January 10, 2005, Ms. Ahrens presented Cal
13 Investors with checks for the back-due rent. However, a stop-
14 payment was later placed on the checks. Consequently, Cal Investors
15 again posted a three-day notice on the property on January 18, 2005
16 and mailed a copy to the plaintiff and Ms. Ahrens at that address.
17 After receiving no response, defendant Giguiere initiated a third
18 unlawful detainer action on January 24, 2005. On January 31, 2005,
19 the defendant contends that the plaintiff was sub-served by the
20 Complaint and Summons being left with Ms. Ahrens at the Grayling
21 Avenue property. Id. ¶ 53. On February 2, 2005, Ms. Ahrens filed
22 an answer to this action, in which she stated that the plaintiff
23 had not resided at the property since December 2000.
24 　　A default judgment was entered against plaintiff on March 8,
25 2005. In January 2006, the plaintiff learned of the judgment and
26 wrote a letter to defendant Giguiere challenging the validity of

3

1  the debt and the default judgment. Plaintiff's Separate Statement
2  of Undisputed Facts ¶ 15. On February 2, 2006, defendant Giguiere
3  submitted an Abstract of Judgment to the Sacramento County Superior
4  Court. The court issued the abstract the next day. In April 2006
5  the plaintiff moved to set aside the default judgment. Defendant
6  Giguiere opposed the motion. Id. ¶ 19. In May 2006, the court
7  granted the motion, setting aside the default judgment. Id. ¶ 20.
8  Later that month, defendant Giguiere sent a letter to the
9  plaintiff's counsel proposing a mutual release of all claims with
10 no money being paid by either party. Id. ¶ 22. She recorded the
11 Release of Abstract of Judgment in July 2006. Id. ¶ 24. The
12 plaintiff filed the present action with this court on September 25,
13 2006.

14  Defendant Giguiere is a solo practitioner specializing in real
15 estate law. About 40-50 percent of her practice is unlawful
16 deatiner work. Id. ¶ 3. Of this, her collection work for Budget
17 Property Management and Cal Investors has comprised about 3 percent
18 of her legal work since 1987. Id. This includes the filing of about
19 forty debt collection cases in the past three years. Id. She
20 asserts that she does not employ anyone to assist her in her debt
21 collection work. Defendant's Statement of Undisputed Facts ¶ 5.

## II. SUMMARY JUDGMENT STANDARD UNDER

## FEDERAL RULE OF CIVIL PROCEDURE 56

24  Summary judgment is appropriate when it is demonstrated that
25 there exists no genuine issue as to any material fact, and that the
26 moving party is entitled to judgment as a matter of law.  Fed. R.

4

Civ. P. 56(c); see also Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Secor Ltd. v. Cetus Corp., 51 F.3d 848, 853 (9th Cir. 1995).

> Under summary judgment practice, the moving party [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a

5

1 genuine issue as to any material fact actually does exist.
2 Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,
3 586 (1986); see also First Nat'l Bank of Ariz. v. Cities Serv. Co.,
4 391 U.S. 253, 288-89 (1968); Secor Ltd., 51 F.3d at 853.

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11; see also First Nat'l Bank, 391 U.S. at 289; Rand v. Rowland, 154 F.3d 952, 954 (9th Cir. 1998). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Owens v. Local No. 169, Ass'n of Western Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1992) (quoting T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987)), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Anderson, 477 U.S. 248-49; see also Cline v. Indus. Maint. Eng'g & Contracting Co., 200 F.3d 1223, 1228 (9th Cir. 1999).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the

6

1  parties' differing versions of the truth at trial." First Nat'l
2  Bank, 391 U.S. at 290; see also T.W. Elec. Serv., 809 F.2d at 631.
3  Thus, the "purpose of summary judgment is to 'pierce the pleadings
4  and to assess the proof in order to see whether there is a genuine
5  need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R.
6  Civ. P. 56(e) advisory committee's note on 1963 amendments); see
7  also Int'l Union of Bricklayers & Allied Craftsman Local Union No.
8  20 v. Martin Jaska, Inc., 752 F.2d 1401, 1405 (9th Cir. 1985).

9       In resolving the summary judgment motion, the court examines
10 the pleadings, depositions, answers to interrogatories, and
11 admissions on file, together with the affidavits, if any.  Rule
12 56(c); see also In re Citric Acid Litigation, 191 F.3d 1090, 1093
13 (9th Cir. 1999).  The evidence of the opposing party is to be
14 believed, see Anderson, 477 U.S. at 255, and all reasonable
15 inferences that may be drawn from the facts placed before the court
16 must be drawn in favor of the opposing party, see Matsushita, 475
17 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654,
18 655 (1962) (per curiam)); See also Headwaters Forest Def. v. County
19 of Humboldt, 211 F.3d 1121, 1132 (9th Cir. 2000).  Nevertheless,
20 inferences are not drawn out of the air, and it is the opposing
21 party's obligation to produce a factual predicate from which the
22 inference may be drawn.  See Richards v. Nielsen Freight Lines, 602
23 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902
24 (9th Cir. 1987).

25      Finally, to demonstrate a genuine issue, the opposing party
26 "must do more than simply show that there is some metaphysical

doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita</u>, 475 U.S. at 587 (citation omitted).

### III. ANALYSIS

The defendant moves for summary judgment on four grounds: (1) that she was not a debt collector under FDCPA, (2) that she did not perform a communication or collection activity under FDCA, (3) that the plaintiff's claim is time-barred, and (4) that she had no duty to confirm the plaintiff's residence at the property before initiating the underlying action. For the reasons discussed below, the court grants the motion in part.

**A.   Whether Defendant Was a Debt Collector Under FDCPA**

For purposes of the FDCPA, a "debt collector" is

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a. In applying this provision, the Ninth Circuit has held that an attorney whose practice included eighty percent debt collection work was a "debt collector" under the FDCPA. <u>Fox v. Citicorp Credit Services, Inc.</u>, 15 F.3d 1507, 1513 (9th Cir. 1994). There appears to be no other cases from the Ninth Circuit construing this section, but both parties have directed the court to the rules employed by other circuits.

Some circuits consider the number of collection activities in

the relevant period, the frequency of the collection activities, whether the defendant has personnel who work on collection activities, whether the defendant has systems to facilitate debt collection, and whether the collection activities take place as part of an on-going client relationship with another entity which has hired the defendant to perform collection work. See Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti, 374 F.3d 56, 62-63 (2d Cir. 2004); Schroyer v. Frankel, 197 F.3d 1170, 1176 (6th Cir. 1999). Courts also consider what percentage of the defendant's caseload and revenues are collection activities. Schroyer, 197 F.3d at 1176. In the Third Circuit, a defendant may be deemed a debt collector if he engages in collection activities "more than a handful of times per year," although a defendant's ongoing client relationship with an entity on whose behalf the defendant does collection work is also relevant. Crossley v. Lieberman, 868 F.2d 566, 569-70 (3rd Cir. 1989).

The defendant argues that her alleged collection activities in the years prior to the activities underlying the present action is irrelevant. She directs the court to Goldstein, where the Second Circuit considered the number of collection activities the defendant performed "in the relevant period." Goldstein, 374 F.3d at 62. Despite this language, however, the Goldstein court did not explain what the "relevant period" was, nor is it apparent in its analysis. See id. at 63. Moreover, the Goldstein court explained that the factors it used to determine whether the defendant was a debt collector were "illustrative rather than exclusive,"

1  encouraging a case-by-case analysis. Id. at 62.

2  Here, it appears to the court that there is sufficient
3  evidence to permit a reasonable factfinder to conclude that the
4  defendant was a debt collector under FDCPA. By her own declaration,
5  the defendant has one client for whom she routinely does collection
6  work, Giguiere Decl. ¶ 33, although that work comprises less than
7  5 percent of her total work and less than 2 percent of her income.
8  Id. Defendant has filed about forty cases for this client in the
9  past three years. Id. She does not employ anyone to assist her in
10 her collection cases. Id. at ¶ 32. Moreover, in her deposition, Ms.
11 Giguiere stated that between 40-50 percent of her work is unlawful
12 detainer work. Giguiere Depo. 17:2-18:3, 21:16-21:20. In her
13 deposition, she clarified that in her declaration she meant to
14 state that there was one client for whom she did collection work,
15 and the collection work for that client comprised 5 percent of her
16 work; taking into account the additional clients for whom she did
17 unlawful detainer work, the figure was between 40-50 percent. Id.
18 at 17:2-19:6.

19 Based on this, a jury could reasonably conclude that the
20 defendant is a debt collector. Although the defendant asserts that
21 her statement in her deposition that about 40-50 percent of her
22 work was unlawful detainer work does not necessarily constitute a
23 collection activity, this argument is unavailing. By the
24 defendant's own statements, all unlawful detainer actions include
25 a demand for payment. Giguierre Depo. 19:18-21:12. Consequently,
26 the court cannot conclude that, as a matter of law, the defendant

1  was not a debt collector under 15 U.S.C. § 1692a. The defendant's
2  motion as to this issue is denied.

**B.   Whether the Plaintiff's Claim is Time-Barred**

The statute of limitations for bringing a FDCPA action is one year from the date the alleged offense occurred. 15 U.S.C. § 1692k(d); Naas v. Stolman, 130 F.3d 892 (9th Cir. 1997). This limitations period has been described as jurisdictional and not subject to waiver. Mattson v. U.S. West Communications, Inc., 967 F.2d 259, 262 (8th Cir. 1992); see also 15 U.S.C. § 1692k(d) (describing the limitations period under the heading "Jurisdiction"), Naas, 130 F.3d at 892 (characterizing district court's dismissal for plaintiffs' failure to bring claim within the one-year limitations period as an exercise of jurisdiction).

In this case, the plaintiff's complaint was filed on September 25, 2006. The only acts of the defendant alleged to have occurred in the limitations period are the defendant's filing of an Abstract Judgment on February 2, 2006, her filing of an opposition to the plaintiff's Motion to Set Aside Default Judgment on May 1, 2006, and her letter to plaintiff's counsel proposing a settlement on May 19, 2006. All other acts of the defendant of which the plaintiff complains occurred outside the limitations period and therefore cannot be a basis for the defendant's liability under FDCPA. The defendant's motion is therefore granted as to those allegations.

**C.   Whether the Defendant Performed Collection Activity or Communications Under the FDCPA**

The defendant asserts that those acts that did occur within

the limitations period cannot, as a matter of law, constitute violations of FDCPA. The court agrees in part.

### 1. Communication With Plaintiff's Attorney

The plaintiff alleges that defendant violated the FDCPA by contacting the plaintiff's attorney on May 19, 2006, proposing a settlement by which each party would release all claims. This conduct is not actionable under the FDCPA. The Ninth Circuit has held that a debt collector's communications with a debtor's attorney are not collection activities for the purposes of the FDCPA. Guerrero v. RJM Acquisitions, LLC, 499 F.3d 926, 935 (9th Cir. 2007). The Guerrero court reviewed several sections of the FDCPA and observed that the Act consistently treated the debtor and his attorney as separate entities. Id. This comported with the purpose of the Act, as "Congress viewed attorneys as intermediaries able to bear the brunt of overreaching debt collection practices from which debtors . . . should be protected." Id.[2]

Here, the defendant's communication with the plaintiff's attorney on May 19, 2006 clearly falls within the ambit of Guerrero. The letter was directed to the plaintiff's counsel only and proposed a mutual release of all actions. She also stated, "Please let me know if this is acceptable to your client. If I have not heard from you by May 30, I will assume this is not acceptable and will proceed with a memorandum to set the case for trial." This

---

[2] The court opined, however, that if in the debt collector's communication with the attorney, she threatened to contact the debtor, this could be actionable under the FDCPA. Guerrero, 499 F.3d at 936.

12

communication was not directed at the plaintiff nor did it threaten contact with the plaintiff. It is, therefore, not actionable. The court grants defendant's motion as to plaintiff's cause of action, insofar as it is based on this communication.

### 2. Filing of Abstract Judgment and Opposition to Plaintiff's Motion to Set Aside Default

The plaintiff's cause of action alleges violations of 15 U.S.C. §§ 1692d, 1692e, and 1692f.[3] These sections prohibit the debt collector from engaging in improper conduct "in connection with the collection of any debt." By their plain language, these sections are not limited to communications with the debtor. See, e.g., 15 U.S.C. § 1692d(3) (prohibiting the publication of lists of consumers who refuse to pay debts). The Ninth Circuit has held that a defendant can be liable under the FDCPA for acts that related to a judicial proceeding or that were performed to enforce a judgment. Fox v. Citicorp Credit Svcs., 15 F.3d 1507, 1517 (9th Cir. 1994). It rejected the argument that FDCPA does not cover "purely legal" acts, such as the filing of a writ of garnishment. Id. at 1511-12. Elsewhere, the court has emphasized the broad language of the FDCPA, holding that it should be so liberally construed as to approximate a strict liability statute. Clark v. Capital Credit & Collection Svcs. Inc., 460 F.3d 1162, 1171, 1175

---

[3] The plaintiff also argues that the defendant violated 15 U.S.C. § 1692g by failing to cease collection after the plaintiff disputed it. The plaintiff, however, has not pled this theory of liability in his complaint and may not raise it now. See Coleman v. Quaker Oats Co., 232 F.3d 1271, 1292 (9th Cir. 2000).

(9th Cir. 2006).

Accordingly, the court cannot conclude that as a matter of law the allegations that the defendant improperly filed an Abstract Judgment and improperly opposed the plaintiff's motion to set aside the default judgment are not viable. The plaintiff alleges that these acts were performed for the purpose of collecting on a debt. He also presents evidence that they were deceptive in that the defendant had reason to know the debt may not have been lawful. See Plaintiff's Separate Statement of Undisputed Facts in Support of Opposition to Motion for Summary Judgment, ¶¶ 9-11, 15-19. These facts create a genuine issue of material fact that could permit a reasonable jury to conclude that the defendant's filing of the Abstract of Judgment and opposing the plaintiff's Motion to Set Aside the Default Judgment violated 15 U.S.C. §§ 1692d, 1692e, and/or 1692f. Defendant's motion is therefore denied insofar as the plaintiff's cause of action relies on these factual allegations.

**D. Whether Defendant Had A Duty to Investigate the Basis for the Unlawful Detainer Action**

Finally, the defendant seeks summary judgment on the issue of whether she was obligated to investigate the basis for the unlawful detainer action against the plaintiff. This issue is not an element of the plaintiff's cause of action but is relevant to an affirmative defense of bona fide error.

As a preliminary matter, the court observes that the defendant did not list the bona fide error defense in her Answer to the First Amended Complaint. As such, she has waived it. See Federal Rule of

14

Civil Procedure 8(c).

Even if it was not waived, the court cannot conclude that a reasonable jury would be required to find that the defendant has established the elements of this defense. The bona fide error defense provides that the debt collector will not be liable if she shows "by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid such an error." 15 U.S.C. § 1692k(c).  Therefore, to succeed in a motion for summary judgment on this issue the defendant must present evidence showing that, inter alia, she had maintained "procedures reasonably adapted to avoid such an error." See id.; Fox, 15, F.3d at 1514.

Here, a jury could reasonably conclude that the defendant's acts, if they were violations of the FDCPA, were not bona fide errors under section 1692k(c). The plaintiff has offered evidence that the defendant was on notice that the plaintiff did not reside there at the time of the initiation of the detainer actions.[4]

First, prior to initiating the unlawful detainer action, the defendant obtained a copy of the lease, which included a change of terms. This change of terms had only been served on Ms. Ahrens, not the plaintiff. Second, Ms. Ahrens filed an answer to the third detainer summons, in which she stated that the plaintiff has not

---

[4] The question of whether plaintiff's non residence was a defense to the wrongful detainer cause of action is not the subject of the present lawsuit.

15

resided there since December 2000. The defendant received this answer and contacted her clients to inquire whether the plaintiff did reside at the property. She was told that there was no record of the plaintiff having given thirty-day notice of moving out. See Plaintiff's Separate Statement of Undisputed Facts, ¶¶ 11-12. Based on these facts, a jury could reasonably conclude that the defendant's acts did not result from "bona fide errors," but rather that the defendant knew or should have known that the debt the defendant sought to enforce did not exist.

Moreover, the defendant has not offered any evidence that she maintained procedures reasonably designed to avoid such errors. The only procedures of which the court is aware, offered by the plaintiff, is the defendant's phone call to her client to verify whether the plaintiff in fact resided at the Grayling Avenue property. See Plaintiff's Separate Statement of Undisputed Facts, ¶¶ 11-12. Whether this represents a reasonable procedure to avoid errors remains a question for the jury. Certainly, there is not sufficient evidence to convince the court that the defendant has met her burden to show that no reasonable jury could find that the defendant's violations of the FDCPA were "bona fide errors" under the standard stated in section 1692k(c). The court denies the defendant's motion as to this defense.

////
////
////
////

1 **IV. CONCLUSION**

2  For the reasons provided herein, the court GRANTS IN PART the
3 defendant's motion for summary judgment.

4  IT IS SO ORDERED.

5  DATED:   February 14, 2008.

_____
LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT

17