UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

WESLEY RILEY,

NO. CIV. S-06-2126 LKK/KJM

        Plaintiff,

  v.                                O R D E R

MICHELE GIGUIERE, et al,

        Defendants.
_____/

    Plaintiff has brought suit against defendant for alleged violations of the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq. This case came to trial on March 31, 2009 and the court declared a mistrial on April 2, 2009 and ordered the defendant to file a motion for summary judgment. Pending before the court are the parties' cross-motions for summary judgment. The court resolves the motions on the papers and after oral argument.

## I. BACKGROUND AND FACTS

### A.    Procedural History

    Plaintiff commenced this suit in September 2006. He filed an amended complaint in February 2007, which defendants answered. In

1

his Amended Complaint, plaintiff alleged defendant acted as the agent for his former lessor and used improper means in pursuing an unlawful detainer action against him and in seeking to recover a related debt. He alleged the defendant's actions constituted violations of §§ 1692d, 1692e, and 1692f of the FDCPA. He sought compensatory damages for attorneys fees expended in setting aside the default judgment in state court and for emotional distress, statutory damages, and attorneys fees in the instant action.

In April 2007, plaintiff settled with defendants Martin, California Investors, Inc., California Investor, and Budget Property Management, Inc., whereby he agreed to release those defendants and "all of their agents." Munoz Decl. ¶ 4. The court granted a dismissal order upon the stipulation of the parties on May 18, 2007.

In November 2007, defendant moved for summary judgment on four grounds: (1) that she was not a debt collector under FDCPA, (2) that defendants' activities forming the basis of the plaintiff's claim were not covered under the FDCA, (3) that the plaintiff's claim was time-barred, and (4) that she had no duty to investigate the basis of the debt that she was collecting. The court granted the motion in part and denied it in part.

Inter alia, the court held that defendant had not met her burden to prove that no reasonable jury could find that she was a debt collector. The court also held that defendant's only actionable activities as alleged in the complaint were her filing of an Abstract of Judgment in the unlawful detainer action on

1  February 2, 2006 and filing an opposition to plaintiff's motion to

2  set aside the default judgment in Sacramento County Superior Court

3  on May 1, 2006.

4      The court now considers the parties' cross-motions.

5  **B.   Facts[1]**

6      The court set forth the facts of the case in its February 14,

7  2008 order resolving defendant's motion for summary judgment and

8  in its August 8, 2008 Final Pretrial Order. Relative to the instant

9  motions, the parties have tendered additional facts that are

10  relevant to their motions.

11      **1.   Termination of Plaintiff's Tenancy**

12      Plaintiff has tendered evidence that in December 1999, he

13  spoke to Budget Property Management employee Steve Ramirez about

14  terminating his tenancy. Declaration of Tiffany Scarborough In

15  Support of Pl.'s Mot. for Summ. J. ("Scarborough Decl.") Ex. A

16  (Riley Depo. at 46:4-51:9). According to plaintiff, he then drafted

17  a letter stating that he would no longer reside at the property

18

19      [1]All facts are undisputed unless otherwise noted.
    The parties have objected to several items of evidence offered by the other. Each party objects to items of evidence that they had

20  tendered as undisputed for the purposes of the Final Pretrial Order. These objections are overruled.

21      As to the remaining objections, many of the relate to evidence not relied on by the court in ruling on the instant motions. To the

22  extent that the evidence is relied on, the objections are OVERRULED except certain of defendant's objections discussed *infra* at section

23  III.C.1.

24      The plaintiff has also requested the court take judicial notice of several docket items in this case. It is not necessary

25  for the court to take judicial notice of its own orders and parties' filings in this case. Finally, plaintiff requests the

26  court take judicial notice of the fact that West Sacramento is located in Yolo County. That motion is GRANTED.

1  after January 1, 2000. Id.; Declaration of Wesley Riley In Support

2  of Pl.'s Mot. for Summ. J. ("Riley Decl.") ¶ 4, Ex. H. This letter

3  "was virtually dictated to" Mr. Riley by Mr. Ramirez. Riley Depo.

4  at 51:4-9. Shortly thereafter, plaintiff returned his keys to the

5  property management office and faxed Budget the notice of

6  termination letter. Riley Decl. ¶¶ 4-5. Defendant contends that

7  there is no record of Budget having received the fax or a telephone

8  call from plaintiff to confirm receipt of the fax transmission.

9  Declaration of Sandy Mullins In Support of Def.'s Mot. for Summ.

10 J. ("Mullins Decl.") ¶¶ 4-5. Defendant also testified that she

11 never saw this letter when provided the plaintiff's file from

12 Budget. Declaration of William Munoz In Support of Def.'s Mot. for

13 Summ. J. ("Munoz Decl.") ¶ 10, Ex. 49 (Giguiere Depo. at 34:8-17,

14 46:16-49:15); Declaration of Michelle Giguiere In Support of Def.'s

15 Mot. for Summ. J. ("Giguiere Decl.") ¶¶ 15, 18, 23, 24, 28, 29.

16         **2.  Defendant's Debt Collection Work**

17         To supplement the facts set forth in the court's February 14,

18 2008 order, plaintiff has also tendered evidence that, in addition

19 to defendant's unlawful detainer work, she has separately performed

20 debt collection work for a single client. Def.'s Response to Pl.'s

21 Sep. Statement of Undisputed Facts ¶ 30. She has filed

22 approximately forty cases for that client and receives $100 per

23 filing and generally collects $300 if the debt is successfully

24 collected from the debtor. Id. This collection work comprises

25 approximately five percent of her total work. Id.

26 ////

1          **3.    The Unlawful Detainer Actions Against Plaintiff**

2          Much of the evidence tendered in support of the instant

3  motions describing the unlawful detainer actions against plaintiff

4  was described in the court's February 14, 2008 order. Plaintiff has

5  also tendered evidence that defendant saw Sherry Ahrens' Answer to

6  the third unlawful detainer summons and complaint (<u>Santos v. Riley</u>

7  <u>& Ahrens</u>, Sacramento County Superior Court Case No. 05UD00611), in

8  which Ahrens asserted that plaintiff had not resided at the

9  Grayling Way address since December 2000. Def.'s Response to Pl.'s

10 Sep. Statement of Undisputed Facts ¶ 36. Defendant declared that

11 she contacted California Investors (the successor to Budget

12 Property Management) regarding this statement and reviewed the

13 plaintiff's tenancy file, but did not find any notice of

14 plaintiff's termination of his lease. Giguiere Decl. ¶¶ 23-24.

15         In the subsequent trial on the unlawful detainer action,

16 Ahrens testifed that plaintiff had not resided at the property

17 since 2001. Def.'s Response to Pl.'s Sep. Statement of Undisputed

18 Facts ¶ 39. Default judgment was entered against plaintiff in March

19 2005. Defendant filed the Abstract of Judgment in Sacramento County

20 Superior Court on February 2, 2006 and in the Yolo County

21 Recorder's Office on February 10, 2006. Def.'s Response to Pl.'s

22 Sep. Statement of Undisputed Facts ¶ 45. Plaintiff resides in Yolo

23 County and he contends that he had provided his Yolo County home

24 address to defendant in his January 2006 letter to her. Def.'s

25 Response to Pl.'s Sep. Statement of Undisputed Facts ¶ 46.

26         After plaintiff had prevailed in his motion to set aside the

default judgment, defendant contacted plaintiff's counsel by letter on May 19, 2006 offering to settle the action. Def.'s Response to Pl.'s Sep. Statement of Undisputed Facts ¶ 51. The letter provided that defendant would set the case for trial if she had not received a response in ten days. Id. On the same day, however, defendant also signed a Request for Dismissal of the unlawful detainer action with Sacramento Superior Court. Def.'s Response to Pl.'s Sep. Statement of Undisputed Facts ¶ 50. This was filed on June 9, 2006 and dismissal was entered that day. Id. The Request for Dismissal was not served on plaintiff until July 17, 2006. Id.

### 4.   Plaintiff's Damages

Plaintiff has declared that he incurred $7,019.20 in attorneys' fees in defending against the underlying third unlawful detainer action, with counsel billing a rate of $200 per hour. Riley Decl. ¶ 18. According to defendant, plaintiff did not provide billing statement or other substantiation of his claimed attorneys' fees in his Rule 26 disclosures. Munoz Decl. ¶ 15.

Plaintiff also declared that he had sought a home equity loan in January 2006 but "put [it] aside" when he discovered the default judgment on his credit report. Riley Decl. ¶ 15. He has declared that at that time the interest rate advertised by his credit union was 5.375%. Id. When he eventually applied for the loan in May 2006, the interest rate was 6.79%. Id. His application was denied. Id. He has tendered a copy of the rejection letter, which provided that the basis of the denial was, "Delinquent credit history; Garnishment, attachment, foreclosure, repossession, or suit; Ratio

6

of balance to total credit limit on all revolving accounts or no accounts of this type; Near credit limit; Requested amount exceeds recommended credit limit." Id. ¶ 15, Ex. S. Defendant has tendered evidence that the loan application had been rejected pending plaintiff's payment of his second mortgage debt and a collection amount associated with a judgment. Munoz Decl. ¶ 13, Ex. 48 (Depo. of Kimberly Boro at 27:11-24).

Plaintiff has tendered his e-mail communications with Karen Dighton, an employee in the Equity Lending Department of Golden 1 Credit Union. Riley Decl. ¶ 15, Ex. T. In it, they appear to discuss the denial of plaintiff's loan application. Id. In addition to explaining the outcome of the unlawful detainer action, plaintiff also provided a list of outstanding debts that he stated he intended to pay with the loan sought. Id. Among other statements, Dighton stated that plaintiff would have to pay a collection of $12,896 owed to the City of West Sacramento for "Sewer Improvements" before Golden 1 would issue the loan. Id. She advised that plaintiff "would still have to have that debt paid before we could proceed. Maybe when you get this removed from your credit report you can submit another application." Id. She also explained that the loan application could not be kept pending for sixty days while plaintiff sought to have that debt removed from his credit report, but would have to be regenerated and the interest rate would correspond to the date of the new report. Id.

Plaintiff then appears to have sent Dighton a notice from his credit reporting agency of removal of the unlawful detainer

1  judgment from his credit report. _Id._ A week later, Dighton
2  responded that Golden 1 "pulled a new credit report and the
3  collection is indeed missing." _Id._ She advised that her manager
4  authorized her to offer plaintiff the interest rate at the time of
5  his initial application. _Id._ However, plaintiff has declared that
6  when he signed the loan papers, the interest rate given to him was
7  6.99%, not the 6.79% that he declares was available at the time of
8  his initial application. _Id._ ¶ 15. This resulted in a difference
9  of $2,005.32 over the life of the loan. _Id._ ¶ 16. Defendant has
10 tendered the deposition testimony of Dighton that plaintiff
11 received the interest rate that had been initially available to him
12 upon his submission of his loan application. Munoz Decl. ¶ 11, Ex.
13 47 (Depo. of Karen Dighton at 34:18-35:13).

14      According to plaintiff, removal of the unlawful detainer
15 judgment from his credit report also resulted in removal of a debt
16 of $10,852 asserted by "UD Registry" for "security deposit/damages"
17 to the relevant property. _Id._ ¶ 17. Defendant has tendered evidence
18 that this amount was reported by California Investors in April 2005
19 based upon the repairs necessary for damage done to the house, cost
20 to change the locks, and past due rent. Mullins Decl. ¶¶ 6-7.

21          **SUMMARY JUDGMENT STANDARDS UNDER FEDERAL RULE OF**
22                      **CIVIL PROCEDURE 56**

23      Summary judgment is appropriate when it is demonstrated that
24 there exists no genuine issue as to any material fact, and that the
25 moving party is entitled to judgment as a matter of law. Fed. R.
26 Civ. P. 56(c); _see also_ Adickes v. S.H. Kress & Co., 398 U.S. 144,

1  157 (1970); Secor Ltd. v. Cetus Corp., 51 F.3d 848, 853 (9th Cir.

2  1995).

3       Under summary judgment practice, the moving party

4       [A]lways bears the initial responsibility of informing
        the district court of the basis for its motion, and
5       identifying those portions of "the pleadings,
        depositions, answers to interrogatories, and admissions
6       on file, together with the affidavits, if any," which it
        believes demonstrate the absence of a genuine issue of
7       material fact.

8  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the

9  nonmoving party will bear the burden of proof at trial on a

10 dispositive issue, a summary judgment motion may properly be made

11 in reliance solely on the 'pleadings, depositions, answers to

12 interrogatories, and admissions on file.'" Id. Indeed, summary

13 judgment should be entered, after adequate time for discovery and

14 upon motion, against a party who fails to make a showing sufficient

15 to establish the existence of an element essential to that party's

16 case, and on which that party will bear the burden of proof at

17 trial. See id. at 322. "[A] complete failure of proof concerning

18 an essential element of the nonmoving party's case necessarily

19 renders all other facts immaterial." Id. In such a circumstance,

20 summary judgment should be granted, "so long as whatever is before

21 the district court demonstrates that the standard for entry of

22 summary judgment, as set forth in Rule 56(c), is satisfied." Id.

23 at 323.

24     If the moving party meets its initial responsibility, the

25 burden then shifts to the opposing party to establish that a

26 genuine issue as to any material fact actually does exist.

9

1   <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574,

2   586 (1986); <u>see</u> <u>also</u> <u>First Nat'l Bank of Ariz. v. Cities Serv. Co.</u>,

3   391 U.S. 253, 288-89 (1968); <u>Secor Ltd.</u>, 51 F.3d at 853.

4        In attempting to establish the existence of this factual

5   dispute, the opposing party may not rely upon the denials of its

6   pleadings, but is required to tender evidence of specific facts in

7   the form of affidavits, and/or admissible discovery material, in

8   support of its contention that the dispute exists.  Fed. R. Civ.

9   P. 56(e); <u>Matsushita</u>, 475 U.S. at 586 n.11; <u>see</u> <u>also</u> <u>First Nat'l</u>

10  <u>Bank</u>, 391 U.S. at 289; <u>Rand v. Rowland</u>, 154 F.3d 952, 954 (9th Cir.

11  1998).   The opposing party must demonstrate that the fact in

12  contention is material, i.e., a fact that might affect the outcome

13  of the suit under the governing law, <u>Anderson v. Liberty Lobby,</u>

14  <u>Inc.</u>, 477 U.S. 242, 248 (1986); <u>Owens v. Local No. 169, Ass'n of</u>

15  <u>Western Pulp and Paper Workers</u>, 971 F.2d 347, 355 (9th Cir. 1992)

16  (quoting <u>T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n</u>,

17  809 F.2d 626, 630 (9th Cir. 1987)), and that the dispute is

18  genuine, i.e., the evidence is such that a reasonable jury could

19  return a verdict for the nonmoving party, <u>Anderson</u>, 477 U.S. 248-

20  49; <u>see</u> <u>also</u> <u>Cline v. Indus. Maint. Eng'g & Contracting Co.</u>, 200

21  F.3d 1223, 1228 (9th Cir. 1999).

22       In resolving the summary judgment motion, the court examines

23  the pleadings, depositions, answers to interrogatories, and

24  admissions on file, together with the affidavits, if any.  Rule

25  56(c); <u>see</u> <u>also</u> <u>In re Citric Acid Litigation</u>, 191 F.3d 1090, 1093

26  (9th Cir. 1999).  The evidence of the opposing party is to be

believed, see Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, see Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam)); see also Headwaters Forest Def. v. County of Humboldt, 211 F.3d 1121, 1132 (9th Cir. 2000). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

## III. ANALYSIS

The parties have raised several issues in their motions for summary judgment, which essentially relate to three central questions: 1) whether defendant was a debt collector under the FDCPA; 2) whether defendant's conduct violated the FDCPA; and 3) whether plaintiff has demonstrated he suffered damages. The court considers the parties' arguments as they address these questions.

**A.   Whether Defendant Was a Debt Collector Under the FDCPA**

In its February 14, 2008 order, the court described the definition of a "debt collector" under the FDCPA. Briefly, a debt collector includes anyone who "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a. The Ninth Circuit has not offered any further guidance on the interpretation of this definition, except to hold that it includes attorneys and that a

11

1 person whose debt collection constitutes 80 to 100 percent of his
2 total work is, with "no question," a debt collector. <u>Fox v.</u>
3 <u>Citicorp Credit Services, Inc.</u>, 15 F.3d 1507, 1513 (9th Cir. 1994).
4 The Ninth Circuit also cited approvingly <u>Scott v. Jones</u>, 964 F.2d
5 314, 316 (4th Cir. 1992), where the court held an individual was
6 a debt collector where 70 to 80 percent of his legal fees were
7 generated through debt collection work. <u>Fox</u>, 15 F.3d at 1513 n. 5.

8     In defining "debt collector," other courts have considered
9 the number of collection activities and percentage of the
10 individual's total workload this represents, the frequency of the
11 collection activities, whether the defendant has personnel who work
12 on collection activities, whether the defendant has systems to
13 facilitate debt collection, and whether the collection activities
14 take place as part of an on-going client relationship on whose
15 behalf the defendant does collection work. See <u>Goldstein v. Hutton,</u>
16 <u>Ingram, Yuzek, Gainen, Carroll & Bertolotti</u>, 374 F.3d 56, 62-63 (2d
17 Cir. 2004); <u>Crossley v. Lieberman</u>, 868 F.2d 566, 569-70 (3rd Cir.
18 1989); <u>Schroyer v. Frankel</u>, 197 F.3d 1170, 1176 (6th Cir. 1999).

19     Finally, the court observes that statutes are to be construed
20 by their plain meaning. <u>See</u>, <u>e.g.</u>, <u>Caminetti v. United States</u>, 242
21 U.S. 470, 485 (1917). "Regular" is defined as "appearing or
22 occurring repeatedly from time to time" and is synonymous with
23 "frequent, habitual, periodic, repeated, steady." Merriam-Webster
24 Thesaurus (2006). Neither of the parties have directed the court
25 to an alternative definition of the statutory term.

26     With these principles in mind, it is apparent that defendant

1   is a debt collector under the FDCPA. It is undisputed that

2   collections actions constitute 40 to 50 percent of her total work,

3   which includes a client for whom she performs exclusively debt

4   collection work as well as work for various clients on unlawful

5   detainer actions, which all include demands for payment. See Order,

6   Feb. 14, 2008 at 10. The latter category includes approximately

7   fifty clients over the past ten years. Pl.s' SUF ¶ 27. For a single

8   client she had filed forty debt collection cases over the last

9   three years, comprising approximately five percent of her work and

10  two percent of her income. Id. ¶ 30; Order, Feb. 14, 2008 at 10.

11  Budget Property Management has "routinely" hired her to perform

12  unlawful detainer and debt collections and approximately three

13  percent of her legal work has been on behalf of Budget in this

14  capacity since 1987.[2] Pl.'s SUF ¶ 28.

15      These facts demonstrate that defendant "regularly" engages in

16  debt collection activities so as to constitute a debt collector

17  under the FDCPA. The number of debt collection clients, their

18  proportion of her total workload, and the frequency with which she

19  engages in debt collection activities all support this conclusion.

20  See Goldstein, 374 F.3d at 62-63 (these factors weigh towards a

21  finding that a defendant is a debt collector); Crossley, 868 F.2d

22  at 569-70 (same); Schroyer, 197 F.3d at 1176 (same). Moreover,

23

24          [2]In plaintiff's motion he refers to defendant's purported
    advertisements for her services but he has not tendered any
25  evidence in support of these contentions. See generally Plaintiff's
    Separate Statement of Undisputed Facts in Support of Motion for
26  Summary Judgment. Accordingly, the court disregards them.

13

defendant has been routinely employed to perform debt collection activities for at least some of her clients. Pl.'s SUF ¶¶ 28, 30. Her debt collection work for just two of these clients comprises almost ten percent of her total work. See id. This significant, on-going relationship with clients for whom she performs debt collection work also indicates that she should be considered a debt collector under the FDCPA. See Goldstein, 374 F.3d at 62-63; Crossley, 868 F.2d at 569-70; Schroyer, 197 F.3d at 1176.

Accordingly, the court grants plaintiff's motion for summary judgment on this issue.[3]

**B.   Whether Defendant's Debt Collection Activities Violated the FDCPA**

In plaintiff's Amended Complaint, he identified the following activities that he alleged violated the FDCPA: 1) filing a false proof of service in one of the unlawful detainer actions on February 16, 2005; 2) submitting an abstract of judgment against plaintiff in one of the unlawful detainer actions on February 3, 2006; 3) sending a letter to plaintiff's counsel on May 19, 2006

---

[3]Despite defendant's contentions to the contrary, this does not contradict the court's previous ruling on this issue. In its February 14, 2008 order, the court denied defendant's motion for summary judgment on the issue of whether defendant was a debt collector. Plaintiff has not previously moved for summary judgment on the issue.

Moreover, in opposing plaintiff's motion the defendant has relied on Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti, 374 F.3d 56, 62-63 (2d Cir. 2004), as purportedly asserting a rule for the relevant time period of debt collection activities the court must consider. The court addressed and rejected defendant's identical argument in its February 14, 2008 order.

1   proposing a settlement; and 4) dismissing the third unlawful

2   detainer action with prejudice on June 6, 2006. Amended Compl. ¶¶

3   10, 15-18. He alleged that these action violated sections 1692d,

4   1692e, and 1692f of the FDCPA. Id. ¶¶ 20-22. Over the course of the

5   litigation, the parties apparently have understood plaintiff's

6   claims to also be based on defendant's opposition to plaintiff's

7   motion to set aside the default judgment in the third unlawful

8   detainer action. See Def.'s Pretrial Statement, Doc. 87, at 11-12;

9   Final Pretrial Order at 21:7-12. In the court's February 14, 2008

10  order, it found that plaintiff's claims based on defendant's filing

11  a proof of service on February 16, 2005 and sending a letter

12  proposing a settlement to plaintiff's counsel on May 19, 2006 were

13  barred. See Order, Feb. 14, 2008 at 11-14.

14      In the instant motions, the parties seek summary judgment on

15  plaintiff's claim as it relates to the remaining allegations. They

16  also raise additional issues, which the court considers in turn.

17      At oral argument, the court raised with the parties the

18  unbriefed issue of whether plaintiff's allegations should be

19  properly understood as alleging a single course of conduct that

20  violates the FDCPA or whether each of the defendant's alleged acts

21  must be considered separately as potential individual violations

22  of the FDCPA. After hearing argument and weighing the question, the

23  court concludes that the former approach is appropriate in this

24  case. First, as plaintiff's counsel pointed out at hearing, the

25  purpose of the FDCPA is to protect consumers broadly from improper

26  practices and the statute is to be interpreted liberally for this

1   purpose. <u>Clark v. Capital Credit & Collection Services, Inc.</u>,

2   460 F.3d 1162, 1171, 1175 (9th Cir. 2006).  Second, the language

3   of the statute is expansive, with its sections relevant to this

4   case referring to "conduct" and "means" of collecting a debt. 15

5   U.S.C. §§ 1692d, 1692e, 1692f. Similarly, there is minimal

6   practical effect in considering plaintiff's claim as describing a

7   course of conduct rather than several individual alleged violation

8   of the statute, because the FDCPA only permits statutory damages

9   to be recovered per action, rather than per violation. 15 U.S.C.

10  § 1692k(2)(A). This obviously stands in contrast to those statutes

11  for which Congress has permitted recovery of damages for each of

12  defendant's violations of the statute, <u>see</u>, <u>e.g.</u>, 33 U.S.C. §

13  1319(d); 42 U.S.C. § 2000e-5(e)(3), which suggests it was

14  consistent with Congress's purpose in enacting the FDCPA to hold

15  that a single course of conduct may violate the statute.[4]

16      Finally, the statute of limitations does not present an

17  impediment to viewing defendant's actions as a single course of

18  conduct. As the court identified in its February 14, 2008 order,

19  several of defendant's alleged acts occurred within the limitations

20  period. Understanding the factual context of those acts through

21  evidence of defendant's activities beyond the limitations period

22  may be helpful to a factfinder in assessing the character of the

23  acts that occurred within the limitations period. For example,

24  defendant's filing an opposition to plaintiff's motion to set aside

25  _____

26      [4]That is not to say that a course of conduct is required.

the default judgment in the unlawful detainer action may not appear abusive or unfair, see 15 U.S.C. §§ 1692d, 1692f, in and of itself, but a jury may believe otherwise when that act is viewed in light of defendant's earlier acts. In other words, in the factual context of this case, discernment of whether defendant's acts violated the FDCPA may only be possible when her entire course of conduct relative to the third unlawful detainer action is viewed.

Because plaintiff's allegations are premised in large part on his assertion that defendant proceeded against him in the third unlawful detainer action while knowing that service of the complaint and summons had been improper,[5] the court first considers whether that issue has been preclusively resolved by the state court.

### 1. Whether Collateral Estoppel Precludes the Court's Inquiry Into Whether Service Was Proper

When determining the preclusive effect of a decision or judgment of the state court, a federal court must apply the state's claim preclusion rule. Kremer v. Chemical Const. Corp., 456 U.S. 461, 481-82 (1982) ("Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgment emerged would do so." (citations omitted)). Here, because the earlier judgment was rendered by a California state court, the court employs the state's

---

[5]In this way, defendant's scienter is necessary in plaintiff's theory of recovery, despite it typically not being an element of a FDCPA claim. See Clark v. Capital Credit & Collection Servs., Inc., 460 F.3d 1162, 1174-77 (9th Cir. 2006)

collateral estoppel rule. In California, collateral estoppel applies where the issue decided in the prior determination is identical to that presented in the second action, there was a final judgment on the merits in the earlier action, and the party against whom estoppel is asserted was a party to the earlier action or in privity with a party to the earlier action. See, e.g., Clemmer v. Hartford Ins. Co., 22 Cal. 3d 865, 874-75 (1979) (en banc).

Here, it is apparent that most of the elements of this standard have been met as to the issue of whether service in the third unlawful detainer action, Santos v. Riley, Sacramento County Superior Court Case No. 05UD00611. Plaintiff moved to set aside the default judgment in that action based on his assertion that service had been improperly rendered. See Riley Decl. Ex. P. The defendant in that action, Josephine Santos, through her attorney defendant Giguiere opposed the motion on the grounds that substitute service had been proper. Id. Ex. Q. The court then concluded that "good cause" existed to set aside the default judgment. Id. Ex. R.

It therefore seems plain that the identical question of whether service was proper has been actually litigated in state court and that the state court made its determination to set aside the default judgment based on that sole issue. See Clark v. Bear Sterns & Co., Inc., 966 F.2d 1318, 1321 (9th Cir. 1992) ("When the issue for which preclusion is sought is the only rational one the factfinder could have found, then the issue is considered foreclosed, even if no explicit finding on the issue has been made."). The more difficult question is whether defendant Giguiere

1   is properly considered to have been in privity, for preclusion

2   purposes, with the defendant client in the earlier action.

3       The California Supreme Court has recognized that "[p]rivity

4   is a concept not readily susceptible of uniform definition," but

5   has been held to exist where the parties in the two suits are

6   successors in interest, where one was the representative of the

7   other, and where there is a "sufficiently close" relationship

8   between the parties. <u>Clemmer</u>, 22 Cal. 3d at 875. The court adopted

9   the following rule to determine whether a party's relationship with

10  a prior litigant was sufficiently close to cause estoppel to apply:

11          [D]ue process requires that the party to be estopped
            must have had an identity or community of interest with,
12          and adequate representation by, the losing party in the
            first action as well as that the circumstances must have
13          been such that the party to be estopped should
            reasonably have expected to be bound by the prior
14          adjudication. [Citation omitted.] Thus, in deciding
            whether to apply collateral estoppel, the court must
15          balance the rights of the party to be estopped against
            the need for applying collateral estoppel in the
16          particular case, in order to promote judicial economy by
            minimizing repetitive litigation, to prevent
17          inconsistent judgments which undermine the integrity of
            the judicial system, or to protect against vexatious
18          litigation. [Citation omitted.]

19  <u>Id.</u>

20      Because the rule is bounded by the restrictions of due process

21  encompassed in the Fourteenth Amendment, <u>see</u> <u>Bernhard v. Bank of</u>

22  <u>America Nat. Trust & Savings Ass'n</u>, 19 Cal. 2d 807, 810-811 (1942),

23  the Supreme Court's limitations on the collateral estoppel rule are

24  also relevant. In <u>Taylor v. Sturgell</u>, __ U.S. __, 128 S. Ct. 2161

25  (2008), the Court described the limitations on the concept of

26

privity for preclusion purposes.[6] There, the Court reversed a ruling by the District of Columbia Circuit Court of Appeals that had held that one individual had been in privity with another for preclusive purposes where the first litigant was the second litigant's friend and both men had brought suits to seek identical records under the Freedom of Information Act. Id. at 2167. The Court rejected the D.C. Circuit's "virtual representation" rule that permitted a finding of privity where the court found that there existed identity of interests and adequate representation of the second litigant by the first litigant, as well as at least one of the following factors: "a close relationship between the present party and his putative representative, substantial participation by the present party in the first case, or tactical maneuvering on the part of the present party to avoid preclusion by the prior judgment." Id. at 2169-70 (citations omitted).[7]

The Court held that this was an impermissibly broad privity standard. Id. at 2173. Instead, a non-party may only be bound by a judgment where (1) it has agreed to be bound, (2) there exists a legal relationship between the non-party and the earlier litigant, such as bailee and bailor or assignee and assignor, (3)

_____

[6]Although the Court discussed the federal common law standard for collateral estoppel, its limitations on the privity rule were expressly bounded by due process considerations. Taylor, 128 S. Ct. at 2174, citing Richards v. Jefferson County, 517 U.S. 793 (1996) and S. Cen. Bell Tel. Co. v. Alabama, 526 U.S. 160 (1999).

[7]The Court observed that a similar standard has been employed by the Ninth Circuit. Id. at 2170, n. 3, citing Kourtis v. Cameron, 419 F.3d 989, 996 (9th Cir. 2005).

the non-party was "adequately represented by someone with the same interests who [wa]s a party to the suit," such as a trustee, guardian, or fiduciary, (4) the non-party assumed control of the prior litigation, such that it was able to present "proofs and argument", (5) the non-party was the designated representative of the earlier litigant, or (6) where a statutory scheme "expressly foreclose[s] successive litigation," such as bankruptcy and probate proceedings. Id. at 2172-73. The third category of adequate representation in the earlier litigation encompasses only those circumstances where the interests between the party and non-party were aligned and there were special procedures to protect the non-party's interests or where the original litigants understood that the first suit was brought in a representative capacity. Id. at 2176 (citations omitted); see also S. Cent. Bell & Tel. Co. v. Alabama, 526 U.S. 160 (1999); Richards v. Jefferson County, Alabama, 517 U.S. 793 (1996). These limitations appear to accord with the collateral estoppel rule employed in California, see Clemmer, 22 Cal. 3d at 875, as some California courts have also observed. See, e.g., Johnson v. GlaxoSmithKline, Inc., 166 Cal. App. 4th 1497, 1510 n.8 (2008).

Defendant has directed the court to several cases in which courts have found that an attorney and his previous client are not in privity for preclusion purposes, but those cases appear to have applied a different privity standard than that employed by the Taylor Court or are factually distinguishable. For example, in Foster v. D.B.S. Collection Agency, 463 F. Supp. 2d 783, 797 (S.D.

Ohio 2006), the court defined privity narrowly as only including successors in interest. The court in Steiner v. E.J. Bartells Co., 170 Or. App. 759, 763 (2000), interpreted the concept equally narrowly as only applying where the non-party controlled the prior litigation. Dawson v. Toledano, 109 Cal. App. 4th 387, 398-99 (2003), considered the factually distinguishable scenario where the court held that a court's dismissal of an appeal as frivolous did not have preclusive effect in a party's subsequent malpractice action against his attorneys in the appeal. The court concluded that to find there was privity in such a circumstance would be inequitable, as in the first suit the attorney has acted as simply a vehicle for his client's decisions. Id.

The same result is not warranted here. The court is persuaded that defendant was in privity with Santos in the prior litigation such that the earlier determination should have preclusive effect in the instant suit. Several facts suggest this. First, there is a complete identity of interests between Giguiere and Santos. Both have sought a determination that service on plaintiff was proper in the unlawful detainer action,  so as to defeat plaintiff's motion to set aside the default judgment and to defeat plaintiff's FDCPA claim here. Indeed, virtually the same arguments have been raised by defendant in this motion as were raised in the prior action by Santos (as drafted and submitted by Giguiere). See Def.'s Mot. for Summ. J.; Riley Decl. Ex. Q (Santos' opposition to set aside the default judgment). Moreover, Giguiere had the opportunity to -- and did -- submit evidence in the earlier action, in the form

1  of her declaration in support of Santos' opposition to plaintiff's
2  motion. Riley Decl. Ex. Q. Therefore, it cannot be said that the
3  prior proceedings did not afford defendant the opportunity to
4  protect her interests in that suit. See Clemmer, 22 Cal. 3d at 875.

5         Additionally, the unique facts of this case make it
6  distinguishable in an important way from Dawson, 109 Cal. App. 4th
7  387, and from those cases generally where the Court has found a
8  lack of privity so as to implicate due process concerns. See, e.g.,
9  S. Cent. Bell & Tel. Co., 526 U.S. 160; Richards, 517 U.S. 793. In
10 the unlawful detainer action, defendant was not a mere conduit for
11 her client's arguments or otherwise disinterested in the outcome
12 of the motion to set aside the default judgment. The central issue
13 of the motion was the propriety of Giguiere's own conduct in
14 effecting service. In this way, she not only represented her
15 client's interests as attorney but her client's sole argument in
16 opposition to the motion to set aside the judgment was that
17 Giguiere's own conduct had been lawful. This demonstrates an
18 inextricable unity of interests between Giguiere in this action and
19 Santos in the earlier action. As such, application of the privity
20 rule to preclude relitigation of the service question in this
21 unusual case does not offend Giguiere's due process interests. See
22 Clemmer, 22 Cal. 3d at 875; Taylor, 128 S. Ct. at 2173.

23        Accordingly, the court concludes that the state court's ruling
24 in setting aside the default judgment on the basis of improper
25 service precludes this court's determination of the same issue. For
26 the purposes of the instant action, service in the third unlawful

detainer action, <u>Santos v. Riley</u>, Sacramento County Superior Court Case No. 05UD00611, was improper under California law.

> **2.    Plaintiff's Claims Under 15 U.S.C. §§ 1692d, 1692e and 1692f**

Section 1692d forbids a debt collector from engaging in conduct the natural consequence of which is "to harass, oppress or abuse any person in connection with the collection of a debt." The statute contains an illustrative list of conduct that would violate this standard, such as a threat of violence, publication of debtor's name as someone who refuses to pay a debt, or causing a telephone to ring repeatedly. <u>Id.</u> Section 1692e of the FDCPA forbids a debt collector from using "false, deceptive, or misleading . . ." means to collect a debt, including falsely representing the legal status of the debt. 15 U.S.C. § 1692e(1)-(2). Section 1692f proscribes "unfair and unconscionable means to collect a debt," including attempting to collect a debt that is not authorized by law. 15 U.S.C. § 1692f. In order to determine if defendant violated these provisions of the FDCPA, the court considers the effect her acts would have on the least sophisticated debtor. <u>Wade v. Regional Credit Ass'n</u>, 87 F.3d 1098, 1100 (9th Cir. 1996). The statute should be liberally construed so as to approximate a strict liability statute. <u>Clark v. Capital Credit & Collection Svcs. Inc.</u>, 460 F.3d 1162, 1171, 1175 (9th Cir. 2006).

A jury could reasonably find that defendant's conduct that falls within the limitations period -- filing an abstract of judgment and causing it to be recorded and filing an opposition to

plaintiff's motion to set aside the default, as read against time barred conduct -- violated these sections of the FDCPA.[8] As the court explained in its prior summary judgment order, purely legal acts, such as filing a writ, are encompassed under the FDCPA. <u>Fox</u>, 15 F.3d at 1516. It is now undisputable that defendant failed to properly serve plaintiff with the complaint and summons in the third unlawful detainer action. Defendant then obtained default judgment against him, which she then submitted to the clerk for issuance and opposed his motion to set aside the default judgment, however. Nonetheless, defendant asserts she had a way of knowing the service was ineffective. Were the factfinder to credit plaintiff's evidence, these were acts to enforce a debt that was not authorized by law, because defendant knew or should have known that plaintiff had not been properly served. <u>See</u> Scarborough Decl. Ex. H; Riley Decl. ¶ 11, Ex. N.

Were a factfinder to credit plaintiff's evidence and draw inferences in his favor, defendant's actions would have violated § 1692f(1), per that section's plain language. It could also be found to have violated § 1692e(2), as misrepresentations of the legal status of a debt. <u>See</u>, <u>e.g.</u>, <u>Miller v. Javitch, Block & Rathbone</u>, 534 F. Supp. 2d 772, 776 (S.D. Ohio 2008) (false or misleading statements made in a complaint about the legal status of a debt violated § 1692e(2)); <u>Munoz v. Pipestone Fin., LLC</u>, 513

---

[8]Although defendant's offer of settlement to plaintiff's attorney also fell within the limitations period, it cannot be the basis of liability, as the court addresses, *infra*.

F. Supp. 2d 1076 (D. Minn. 2007) (allegations in a complaint that defendant owed attorneys fees to plaintiff were false and therefore could give rise to cause of action under § 1692e(2)). Finally, the same actions could be found violative of § 1692d, as the Court of Appeals has held that repeated attempts to collect a debt the debt collector knows is invalid may violate this section. Clark, 460 F.3d at 1177-78.

Moreover, the factfinder could credit plaintiff's evidence regarding the letter he purportedly sent defendant on January 29, 2006, in which he gave her his address at the time. Riley Decl. ¶ 11, Ex. N. A jury could reasonably find that, based on this, defendant used a false representation when filing the abstract of judgment because she listed on it an address for plaintiff that she knew to be false, causing plaintiff not to be served with the abstract of judgment and, presumably, impeding his ability to set aside the default judgment. A jury could reasonably find that this constituted a violation of § 1692e.[9] As explained above, the conduct that lies outside the limitations period or is otherwise not actionable for reasons described *infra* is relevant for

---

[9]In this way, the instant case is distinguishable from those where courts have held that a debt collector's action to evidence a debt rather than to collect a debt are not actionable. See, e.g., Clark v. Transpack Corp., Case No. CIV-S-04-0332, 2005 WL 3080853 (E.D. Cal. Nov. 11, 2005) (Ishii, J.). Here, plaintiff has alleged and tendered evidence from which a factfinder could conclude that defendant had actual or constructive knowledge that there had not been a lawful basis for the entry of the judgment and submitted false information in support of the filing of the abstract. In this way, the jury could conclude that defendant was not merely evidencing a debt, but had taken additional improper steps that violated §§ 1692e and 1692f.

describing for a factfinder the course of defendant's conduct of which the actionable conduct was a part.

Nonetheless, defendant has tendered evidence in the form of her own testimony that she did not have reason to know that initial service of the complaint and summons had been improper and that she had no actual knowledge of plaintiff's new address. Giguiere Depo. at 34:8-17, 46:16-49:15; Giguiere Decl. ¶¶ 15, 18, 23, 24, 28, 29. The resolution this issue ultimately lies with the factfinder's determination of defendant's credibility and her state of mind, which are typically not proper to resolve at the summary judgment stage. Mendocino Envtl. Ctr. v. Mendocino County, 192 F.3d 1283, 1301 (9th Cir. 1999); Braxton-Secret v. Robins Co., 769 F.2d 528, 531 (9th Cir. 1985). Both parties' motions are therefore denied on plaintiff's claim under §§ 1692e and 1692f.

**3.   Acts of Defendant That May Be Relevant In the Factfinder's Understanding of the Course of Defendant's Conduct, But That May Not Themselves Be Held to Constitute Violations of the FDCPA**

As the court explained in its February 14, 2008 order, there is certain of defendant's alleged acts that may not, standing alone, be the basis of defendant's liability under the FDCPA. This includes actions that lie outside the limitations period or are barred as the basis of plaintiff's recovery for other reasons. Nevertheless, these acts may be relevant to elucidate the defendant's course of conduct and thus provide the necessary context to the factfinder in considering whether defendant's

27

1   actions described in section III.B.2, supra, violated the FDCPA.

2          **a.   Defendant's Communication With Plaintiff's Counsel**

3                   **Proposing Settlement**

4       The court's February 14, 2008 order held that defendant's May

5   19, 2006 letter to plaintiff's attorney proposing a settlement

6   could not constitute a violation of the FDCPA because it was not

7   a communication with the debtor. The court granted defendant's

8   motion for summary judgment on this issue. In his instant motion,

9   plaintiff requests the court to reconsider this decision.

10       "Under the 'law of the case' doctrine a court is generally

11   precluded from reconsidering an issue that has already been decided

12   by the same court, or a higher court in the identical case." United

13   States v. Alexander, 106 F.3d 874, 876 (9th Cir. 1997)(citing

14   Thomas v. Bible, 983 F.2d 153, 154 (9th Cir. 1993), cert. denied,

15   508 U.S. 951 (1993)). Although motions to reconsider are directed

16   to the sound discretion of the court, see Kern-Tulare Water Dist.

17   v. City of Bakersfield, 634 F. Supp. 656, 665 (E.D. Cal. 1986),

18   aff'd in part and rev'd in part on other grounds, 824 F.2d 514 (9th

19   Cir. 1987), cert. denied, 486 U.S. 1015 (1988), considerations of

20   judicial economy weigh heavily in the process. Thus, Local Rule

21   78-230(k) requires that a party seeking reconsideration of a

22   district court's order must brief the "new or different facts or

23   circumstances. . .which. . . were not shown upon such prior motion,

24   or what other grounds exist for the motion." Generally speaking,

25   before reconsideration may be granted there must be a change in the

26   controlling law or facts, the need to correct a clear error, or the

need to prevent manifest injustice. See Alexander, 106 F.3d at 876; see also Sch. Dist. No. 1J, Multnomah County, Oregon v. AC&S, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993); Nunes v. Ashcroft, 375 F.3d 805, 807 (9th Cir. 2003).

Motions to reconsider are not vehicles permitting the unsuccessful party to "rehash" arguments previously presented. See Costello v. United States Government, 765 F. Supp. 1003, 1009 (C.D. Cal. 1991). Nor is a motion to reconsider justified on the basis of new evidence available prior to the court's ruling. See Fay Corp. v. BAT Holdings One, Inc., 651 F. Supp. 307, 309 (W.D. Wash. 1987), aff'd, 896 F.2d 1227 (9th Cir. 1990). Finally, "after thoughts" or "shifting of ground" do not constitute an appropriate basis for reconsideration. See id. These relatively restrictive standards "reflect[] district courts' concern for preserving dwindling resources and promoting judicial efficiency." Costello, 765 F. Supp. at 1009.

Here, plaintiff does not assert that there has been a change in the law or controlling facts that would warrant reconsideration. Instead, the plaintiff argues that the court erred in its interpretation of Guerrero v. RJM Acquisitions, LLC, 499 F.3d 926 (9th Cir. 2007). In making this assertion, plaintiff has reiterated almost verbatim the arguments he made in opposition to defendant's motion in January 2008. Reconsideration of the court's prior ruling is not warranted simply on the basis that plaintiff disagreed with the court's determination of the persuasiveness of his earlier arguments. See Costello, 765 F. Supp. at 1009; Fay Corp., 651 F.

Supp. at 309. Upon review of the prior determination and the authority on which it was based, the court is not persuaded that it committed clear error or that its ruling otherwise constituted a manifest injustice. Plaintiff's motion is denied in this regard.[10]

### b.   Defendant's Dismissal of the Third Unlawful Detainer Action

Finally, plaintiff alleges that defendant violated the FDCPA by dismissing the third unlawful detainer action so as to deprive plaintiff the opportunity to obtain attorneys' fees under the lease agreement. The parties have cross-moved on this aspect of plaintiff's claim.

All of the sections of the FDCPA on which plaintiff's cause of action is based proscribe the debt collector's own acts, each providing that "[a] debt collector may not . . . " perform certain actions. See 15 U.S.C. §§ 1692d, 1692e, 1692f. Plainly, therefore, a debt collector cannot be liable under the Act for conduct that is attributable by law to another. In this case, defendant was the attorney of Josephine Santos, in whose name the unlawful detainer action against plaintiff was brought. Under California law, an attorney has no authority to dismiss an action without her client's consent. See Bowden v. Green, 128 Cal. App. 3d 65, 73 (1982); Linsk v. Linsk, 70 Cal. 2d 272, 276 (1969); Robinson v. Hiles, 119 Cal.

---

[10]Again, this is not to say that a jury may not consider such evidence for such force as it may have on the conduct which may give rise to liability.

1  App. 2d 666 (1953). Accordingly, the dismissal of the unlawful

2  detainer action is not attributable to defendant and cannot form

3  the basis of her liability under the FDCPA.[11]

4      **4.   Additional Issues Raised By Defendant**

5          **a.   Relevance of Validity of the Underlying Debt**

6      In defendant's motion for summary judgment, she argues that

7  her conduct in obtaining a default judgment against plaintiff in

8  the third unlawful detainer action was lawful, because plaintiff

9  was a holdover tenant under California law, even if he had vacated

10 the property. She raises this in response to plaintiff's allegation

11 in his Amended Complaint that defendant violated

12         15 U.S.C. § 1692f which states: 'A debt collector may
           not use unfair or unconscionable means to collect or
13         attempt to collect a debt. Without limiting the general
           application of the foregoing, the following conduct is
14         a violations of this section:
           (1) The collection on any amount . . . unless such
15         amount is expressly authorized by the agreement creating
           the debt or permitted by law.

16

17 Amended Compl. ¶ 22.

18     In response, plaintiff explains that he does not intend to

19 allege that defendant attempted to collect on a debt unauthorized

20 _____

21      [11]In his opposition to defendant's motion, plaintiff appears
    to argue that defendant had an ethical duty to advise Santos that
22  service had been improper and her purported failure to do so
    renders her liable for the dismissal of the action. <u>See</u> Pl.'s Opp'n
23  to Def.'s Mot. for Summ. J. at 16-17. Frankly, the court is
    uncertain as to what plaintiff intends to assert in making this
24  argument. If defendant had advised Santos that service in the
    unlawful detainer action had been improper, as plaintiff indicates
25  defendant was ethically required to do, this would appear to
    justify the dismissal of the action rather than create liability
26  for the dismissal.

1  by California's landlord-tenant law, but that her debt collection
2  practices were unlawful. Pl.'s Opp'n to Def.'s Mot. for Summ. J.
3  at 13-15. Accordingly, defendants motion for summary judgment is
4  granted, to the extent that plaintiff's complaint can be construed
5  to allege that the underlying debt was invalid under California
6  property law.

7                 **b.   Effect of Settlement of Other Defendants**

8       In April 2007, plaintiff settled with all other defendants
9  named in the complaint, including Martin, California Investors,
10  Inc., California Investor, and Budget Property Management, Inc.
11  This settlement was approved by order of the court the following
12  month. The terms of the settlement included that plaintiff agreed
13  to release those defendants and "all of their agents." Munoz Decl.
14  ¶ 4, Ex. 58.

15       For the first time, defendant asserts that this settlement
16  operated to release defendant of all plaintiff's claims against her
17  because she was an agent of some or all of the other defendants.
18  This argument borders on frivolity. See Fed. R. Civ. P. 11(b).
19  Defendant was not a party to the settlement agreement. She has
20  never since raised the issue that she was a party, despite having
21  since moved for summary judgment, participated in a pretrial
22  conference, and begun the trial of the case.  That prior reticence
23  was well taken.  It is plain that plaintiff's claims are brought
24  against defendant for her own conduct, not because she is the agent
25  of a principle who committed misconduct. Defendant's motion is
26  therefore denied on this issue.

## C.   Damages

In addition to statutory damages, plaintiff in his Amended Complaint seeks to recover compensatory damages for emotional distress, attorneys fees he incurred in defending against the third unlawful detainer action, and the alleged difference in the interest rate on the loan he obtained from Golden 1 Credit Union as a result of the time it took him to have the unlawful detainer information removed from his credit report. The parties cross-move on the question of whether he may recover for the alleged difference in the interest rate. Defendant has also moved on the issues of whether plaintiff may recover for attorneys fees and whether plaintiff can bear his burden on the issue of damages for emotional distress. The court considers each in turn.

### 1.   Difference in the Golden 1 Loan Interest Rates

The parties cross-move on the issue of whether plaintiff may recover $2005.30 for the difference in the Golden 1 loan interest rate that he asserts he suffered as a result of the unlawful detainer judgment appearing on his credit report at the time of the loan application. The court grants defendant's motion and denies plaintiff's motion on this issue.

The undisputed evidence tendered to the court is that plaintiff applied for the loan from Golden 1 in May 2006 and was initially denied. It is undisputed that the denial occurred because of information on plaintiff's credit report that he had an unpaid second mortgage and he had a collection debt associated with a judgment. Boro Depo. at 27:11-24. The evidence plaintiff himself

has tendered also indicates that the subsequent approval of the loan was contingent on plaintiff's promise to pay a debt for "sewer improvements." Riley Decl. ¶ 15, Ex. T.

In light of this, even if plaintiff received a higher interest rate after the reconsideration of his application than he would have had his loan application not been initially denied, he had not tendered evidence that the notation of the unlawful detainer judgment on his credit report alone caused the denial of his first application. The undisputed evidence demonstrates that several items on plaintiff's credit report caused the loan application to be denied. Moreover, review of the e-mail communications plaintiff has tendered to the court suggests that the unpaid "sewer improvement" debt alone prevented approval of the application. See Riley Decl. ¶ 15, Ex. T. Even drawing all reasonable inferences in favor of the plaintiff, there is simply inadequate evidence of causation of these asserted damages.

Moreover, plaintiff has not tendered sufficient evidence that he was damaged by the initial denial of his loan application. The Golden 1 employee who handled plaintiff's successful loan application testified that plaintiff received the interest rate that was available to him at the time of his initial application, which was 6.99 percent. Dighton depo 34:18-35:13; see also Riley Decl. ¶ 15, Ex. T (advising plaintiff that he had been approved at the interest rate available at the time of his original application). Plaintiff has tendered no evidence that another interest rate was ever offered to him, aside from his declaration

34

that "in May of 2006 . . . . the interest rate was 6.79%." Riley

Decl. ¶ 15. He has offered no foundation or basis for this belief.

See Fed. R. Evid. 602 (with limited exceptions, a witness may only

testify on matters for which it is established that he had personal

knowledge). Accordingly, he has not tendered admissible evidence

of the damages to which he asserts he is entitled with regards to

the interest rate he obtained for the Golden 1 loan. Defendant's

motion is granted and plaintiff's motion is denied on this issue.

**2.   Attorneys Fees In the Underlying Unlawful Detainer Actions**

Plaintiff has alleged that he incurred $7,019.20 in attorneys'

fees, costs, and expenses in defending against the third unlawful

detainer action. Amended Compl. Prayer for Relief. Defendant moves

for summary judgment on this issue, asserting that plaintiff cannot

recover this amount without having disclosed his attorney's billing

statements, which plaintiff did not do.

Preliminarily, defendant does not dispute that plaintiff could

recover the cost of his attorneys fees, costs, and expenses in

defending against the underlying unlawful detainer action were he

to succeed on his FDCPA claim. Instead, defendant contends that

plaintiff was required to have disclosed the billing records under

Federal Rule of Civil Procedure 26 to substantiate the amount of

the fees claimed. Rule 26 provides that a party must disclose,

"without awaiting a discovery request. . . a computation of each

category of damages claimed by the disclosing party" and must make

available for inspection "the documents or other evidentiary

material, unless privileged or protected from disclosure, on which each computation is based . . . ." Fed. R. Civ. P. 26(a)(1)(A)(iii). It is unclear from the evidence tendered what disclosures plaintiff did make as his initial disclosures. Some of defendant's evidence appears to indicate that plaintiff made no initial disclosures, Def.'s SUF ¶ 97, Munoz Decl. Ex. 52, while other of defendant's evidence indicates that plaintiff made "tardy" initial disclosures. Munoz Decl. ¶ 14. Based on this, the court is unable to conclude that plaintiff violated his duty under Rule 26(a)(1)(A)(iii) such that exclusion of the evidence is proper.

Defendant also contends that plaintiff failed to disclose the basis of the claimed attorneys' fees damages upon defendant's request. Under Rule 26(b), a party may obtain discovery of "any nonprivileged matter that is relevant to any party's claim or defense" unless otherwise limited by court order. Inspection and production of documents is expressly permitted in Rule 34. If a party fails to comply with its disclosures required under Rule 34, the party seeking discovery may move to compel production of the evidence. Fed. R. Civ. P. 37(a)(3)(b).

Here, defendant has tendered evidence that she requested production of documents regarding plaintiff's claim for damages on June 6, 2007 under Rule 34. Munoz Decl. Ex. 50. In his response, plaintiff stated that he would provide these documents, so long as no objection was made to their disclosure.[12] Id. Ex. 51. There is

_____

[12]Plaintiff's counsel now contends that these documents are protected under the attorney-client privilege and as attorney work

no evidence on the record or otherwise to indicate that defendant at any time moved to compel production of these documents. Only where a party has disobeyed a court order to provide or permit discovery may the court, as a sanction, order that evidence excluded from trial. Fed. R. Civ. P. 37(b)(2). Defendant may not, as she appears to have done here, sit on her rights during the discovery period and then seek a remedy from the court when the time to bring discovery motions has passed.

Accordingly, defendant's motion for summary judgment on the issue of whether plaintiff may tender evidence of his attorneys fees damages in the unlawful detainer action is denied.

### 3.   Emotional Distress Damages

In her motion for summary judgment, defendant argues that plaintiff must prove the elements of a claims for intentional infliction of emotional distress under California law in order to recover damages for emotional distress for violations of the FDCPA. Defendant relies on two unpublished cases in which two judges of this court have taken this approach. Bolton v. Pentagroup Fin. Servs., Case No. F-08-0218, 2009 WL 734038 (E.D. Cal. Mar. 17, 2009) (Ishii, J.); Costa v. Nat'l Action Fin. Servs., Case No. S-05-2084, 2007 WL 4526510 (E.D. Cal. Dec. 19, 2007) (Damrell, J.). The Ninth Circuit has not ruled on the issue although, as defendant acknowledges, other district courts have held that those elements

---

product. Supp. Decl. of Tiffany Scarborough In Support of Pl.'s Mot. for Summ. J. and In Support of Pl.'s Opp'n to Def.'s Mot. ¶ 8. I need not consider that claim.

1  need not be proven so long as plaintiff has tendered evidence
2  substantiating that he suffered emotional distress as a result of
3  the defendant's FDCPA violations. See Panahaisal v. Gurney, Case
4  No. 04-04479, 2007 WL 738642 (N.D. Cal. Mar. 8, 2007); see also
5  Boris v. Choicepoint Servs., Inc., 279 F. Supp. 2d 851 (W.D. Ky.
6  2003). With all due respect to my two learned colleagues, I cannot
7  agree.

8      Under the FDCPA, the plaintiff may recover for "any actual
9  damage sustained" as a result of the violations. 15 U.S.C. §
10 1692k(a)(1). In considering the proof required to substantiate a
11 damage award for violations of the FDCPA, courts have noted the
12 statute's similarity to the Fair Credit Reporting Act (FCRA). See
13 Costa, 2007 WL 4526510 at *7; Panahaisal, 2007 WL 738642 at *1-2;
14 Smith v. Law Offices of Mitchell N. Kay, 124 B.R. 182, 185 (D. Del.
15 1991). Like the FDCPA, the FDRA has the purpose of protecting
16 consumers from unfair practices. See 15 U.S.C. § 1681 (FCRA
17 statement of purpose). The damages provision of the FCRA is
18 virtually identical to that of the FCDPA, providing that a person
19 who negligently or willfully fails to comply with the provisions
20 of the statute is liable for "any actual damages sustained by the
21 consumer." 15 U.S.C. §§ 1681n, 1681o; see also 15 U.S.C. §
22 1692k(a)(1) (damage provision of the FDCPA). The Ninth Circuit has
23 held that "actual damages" under the FCRA includes recovery for
24 "emotional distress and humiliation." Guimond v. Trans Union
25 Credit Info. Co., 45 F.3d 1329, 1333 (9th Cir. 1995). In reaching
26 this conclusion, it relied on decisions of the Fifth and Eighth

1  Circuits Courts of Appeals, which had held that emotional distress
2  damages were compensable under the FCRA upon plaintiff's showing
3  that he actually suffered symptoms of emotional distress. Id.,
4  citing Johnson v. Dep't of Treasury, I.R.S., 700 F.2d 971 (5th Cir.
5  1983) and Millstone v. O'Hanlon Reports, Inc., 528 F.2d 829 (8th
6  Cir. 1976).

7      The court can find no reason why the same standard would not
8  apply to the damages provision of the FDCPA. Both statutes have
9  similar purposes and both include identical provisions regarding
10 a plaintiff's recovery for actual damages. In holding that the
11 plaintiff must prove the elements of an intentional infliction of
12 emotional distress claim under California law in order to recover
13 for emotional distress damages, the Costa court reasoned that "the
14 FDCPA expressly requires to recover above and beyond statutory
15 damages, definable actual damages." Costa, 2007 WL 4526510 at *8;
16 see also Bolton, 2009 WL 734038 at *9-10 (citing same). However,
17 the FCRA has the same requirement and the Ninth Circuit held that
18 this standard is met simply by plaintiff tendering evidence of his
19 actual emotional distress, without incorporating the state law's
20 tort elements. See Guimond, 45 F.3d at 1333.

21     Moreover, under the FDCPA, the defendant's subjective intent
22 is not a necessary element for the plaintiff's recovery. Clark v.
23 Capital Credit & Collection Servs., Inc., 460 F.3d 1162, 1174-77
24 (9th Cir. 2006). It appears illogical -- and certainly defendant
25 has directed the court to no authority in support of this position
26 -- for the court to presume that Congress intended for the

1    plaintiff to be required to prove that defendant intentionally

2    caused him emotional distress in order to recover for such damages,

3    when defendant's subjective intent is in no other way relevant to

4    plaintiff's recovery. Such a construction of the statute appears

5    particularly insupportable in light of the fact that Congress did

6    permit a court to reduce the damage award if there was evidence

7    that defendant did not intend to violate the FDCPA but that its

8    conduct was the result of a bona fide error. 15 U.S.C. § 1692k(c);

9    see also Clark, 460 F.3d at 1174-77. Put plainly, it is not proper

10   for the court to insert an intent requirement into plaintiff's

11   recovery for emotional distress damages where Congress has not done

12   so and where Congress expressly provided for the role defendant's

13   intent should have in a FDCPA claim.

14       Accordingly, defendant's motion for summary judgment is denied

15   on the issue of the standard the plaintiff must meet to recover

16   emotional distress damages.

17                          **IV.  CONCLUSION**

18       For the reasons stated herein, defendant's motion for summary

19   judgment is GRANTED IN PART and DENIED IN PART, as provided herein.

20   Plaintiff's motion for summary judgment is GRANTED IN PART DENIED

21   IN PART, as provided herein.

22       A status conference is SET for July 6, 2009 at 11:30 A.M., at

23   which time counsel should be prepared to select new Pretrial

24   Conference and trial dates.

25       IT IS SO ORDERED.

26       DATED:  June 19, 2009.

LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT

40